UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION


AZALP LLC

                         Plaintiff,                                Case No. 4:14-cv-10079-JEM

vs.

BRUCE SILVERSTEIN, YOUNG CONAWAY
STARGATT & TAYLOR, LLP,
PAUL SULLIVAN and P&B FINANCE, LLC,

_____Defendants_____/


**DEFENDANT PAUL SULLIVAN'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

      Defendant Paul Sullivan, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss Plaintiff's Complaint.

## I.    INTRODUCTION

      Paul Sullivan was a member of JTR Enterprises LLC ("JTR"), a limited liability company which Jay Miscovich ("Miscovich") allegedly used to commit a fraud involving a treasure find.  Mr. Sullivan was not an attorney of JTR nor was he a managing member until about two months before the alleged fraud was revealed.  Throughout all of this, Mr. Sullivan lacked any authority to direct JTR's actions or its litigation strategy.  Nevertheless, Plaintiff alleges that he was involved in a criminal enterprise, but not until years after it began and long after Plaintiff suffered its alleged damages.  The Complaint lacks any plausibility, and this is reflected in its vague allegations, that rarely address the conduct of Mr. Sullivan.  Indeed, Plaintiff is allied with Motivation, Inc. (and represented by the same attorneys), who made nearly identical allegations about Mr. Sullivan during sanctions proceedings in related litigation before

District Judge James Lawrence King.  After allowing Motivation, Inc. ("Motivation") to put on evidence in support of these allegations, Judge King dismissed the sanctions claim against Mr. Sullivan for lack of evidence and because Motivation's own evidence directly contradicted these allegations.  Plaintiff's allegations here—the same allegations—should be dismissed as well.

## II.   FACTUAL BACKGROUND

### A.  Miscovich's Alleged Fraud

At the heart of the Complaint is the alleged fraud committed by Miscovich when he claimed to have found emeralds at the bottom of the Gulf of Mexico in January 2010.  On or about March 2010, Scott Miscovich, on Miscovich's behalf, began contacting Plaintiff, seeking investments and loans to fund a salvage operation in the Gulf of Mexico related to that emerald find and to fund an operation for a search of evidence of a shipwreck related to that emerald find.  *See* Complaint [D.E. 1] at ¶ 29.  Through a series of transactions, Plaintiff ultimately invested and loaned funds for those purposes (the "Emerald Find"), in an amount Plaintiff claims is over $1.6 million.  *See id.* at ¶ 43.  Plaintiff does not contend that Mr. Sullivan was involved or made any representations in seeking these investments or loans.

### B.  Mr. Sullivan's Lack of Involvement In The Delaware Litigation And Related Settlements

Plaintiff further alleges that because a dispute arose as to the parties' respective rights of ownership and control of the Emerald Find, Plaintiff commenced litigation in January 2011 in the Chancery Court of Delaware, *Azalp LLP, et al. v. Miscovich, et al.*, C.A. No. 6138-VCL (the "Delaware Litigation") against Miscovich, Scott Miscovich, and Stephen Elchlepp, Jr. (the "Delaware Defendants").  *See* Complaint at ¶ 46.  While Plaintiff alleges that it relied on Defendants' representations made in the Delaware litigation regarding the veracity of the Emerald Find, Plaintiff does not allege that it relied on misrepresentations made by Mr. Sullivan.

*See id.* at ¶¶ 47, 49.   In fact, Plaintiff does not even allege that Mr. Sullivan made *any* misrepresentations.  Plaintiff claims that it incurred not less than $1.7 million in costs related to the Delaware litigation and related matters, *see id.* 1 at ¶ 49, but Plaintiff does not allege any specific representations or involvement by Mr. Sullivan.

On March 29, 2011, Plaintiff alleges that it reached a settlement agreement with the Delaware Defendants where Plaintiff was to receive a promissory note from the Delaware Defendants, an agreement which was memorialized in a written "Memorandum of Understanding" (the "MOU").  *See id.* at ¶ 50.  This MOU included "broad releases," *id.* at ¶ 55, and a covenant not to sue, which are directly relevant here because the MOU released Mr. Sullivan and covenanted not to sue him for the exact type of claims brought in this Complaint.[1] Lastly, the MOU contained two separate provisions providing that the Delaware Defendants consent to the jurisdiction of the Delaware Chancery Court regarding any alleged breaches of the MOU or the related settlement agreement.[2]

Plaintiff claims that it relied on the Delaware Defendants' representations when it accepted the settlement, *see* Complaint at ¶ 52, but does not allege that Mr. Sullivan made any of

---

[1] *See* MOU at ¶ 8(ii) (The MOU released Mr. Sullivan for, among other things, "any and all legal, equitable or other claims, . . . suits, . . . actions and causes of action of any kind whatsoever (whether based on common law or on any federal or state statute, rule, regulation, or other law or right of action) . . . from the beginning of the world to and including the Effective Date, whether now known or unknown, foreseen or unforeseen, matured or unmatured, accrued or not accrued, suspected or unsuspected, fixed or contingent, and whether or not concealed or hidden."); *see id.* at ¶ 9 (The MOU's Covenant Not To Sue provided in relevant part, that: "the Barr Group [including Plaintiff] covenants and agrees that, no member of the Barr Group [including Plaintiff] shall sue or seek to establish liability against any of the Barr Group Releasees [including Mr. Sullivan] based, in whole or in part, upon any claim subject to the claims released in paragraph 8 of this MOU, or cause or encourage or assist any other person to do so.").

[2] *See id.* at ¶ 2 (a provision states that either side may enforce the binding settlement agreement as embodied in the MOU in the Delaware Chancery Court); *id.* at ¶ 10 (a second provision states that for any alleged breaches of the MOU or the related settlement agreement, the Delaware Defendants consent to the jurisdiction of the Delaware Chancery Court).

those representations.  The settlement embodied in the MOU was approved by the Delaware Chancery Court in an Order and Final Judgment on August 19, 2011 (the "Delaware Judgment"). *See id.* at ¶ 72.

On or about January 25, 2012, Plaintiff alleges it entered into a partial settlement with JTR, and Plaintiff claims, without identifying the source, recipient, date, location, or content of the representations, "it was represented, and Plaintiffs still believed, that Miscovich's alleged emerald find was genuine."  *See id.* at ¶ 77.

### C. Mr. Sullivan's Role In The JTR Proceedings And His Lack of Knowledge Of The Alleged Fraud

Related proceedings, case 4:11-cv-10074-JLK (the "JTR Proceedings"), seeking a recovery for the Emerald Find, were brought on behalf of JTR, a limited liability company of which Mr. Sullivan was a member, but not a managing member.  On October 16, 2011, Motivation filed a claim in the JTR Proceedings, alleging the emeralds came from an area in the ocean to which Motivation has exclusive rights.  Complaint at ¶ 94.  On January 25, 2013, after a trial on JTR's *in rem* proceedings, the court held that JTR had failed to provide any basis for admiralty jurisdiction and dismissed the case without making a salvage award or awarding title to Motivation.  *Id.* at ¶¶ 138, 154; *see also* [JTR Proceedings, D.E. 199] at 1.

The only misrepresentation that Plaintiff alleges that Mr. Sullivan made relate to his testimony at the 2014 sanctions trial.   Complaint at  ¶ 172. Plaintiff alleges that the misrepresentations consisted of: "maintain[ing] that Miscovich found emeralds in the ocean"; "repeatedly vouch[ing] for the honesty and integrity of Silverstein"; "den[ying] that the results of the laboratory tests had been withheld from the status reports filed with the [c]ourt by JTR"; and "deny[ing] evidence that Miscovich had committed fraud."  *Id.* at ¶ 174.

Aside from Mr. Sullivan's testimony at the 2014 sanctions trial, Plaintiff does not allege that Mr. Sullivan made a single misrepresentation.  The Complaint is comprised of conclusory allegations of Mr. Sullivan's wrongdoing and of allegations that fail to create a plausible inference of wrongdoing on Mr. Sullivan's part.  *See generally id.* at ¶¶ 81-184.

### D. The Court Dismissed the Claim Against Mr. Sullivan In The JTR Sanctions Proceedings

On August 27, 2012, Motivation filed its original Motion for Sanctions against JTR, Miscovich, and Bruce Silverstein ("Silverstein"), *see* Complaint at ¶ 121; [JTR Proceedings, D.E. 123], and after the January 2014 trial, the court determined that the JTR Proceedings were brought and maintained in bad faith as a fraud on the Court, *see* Complaint at ¶¶ 180-81.[3]

On February 28, 2014, Motivation filed an Amended Motion for Sanctions, seeking to expand the proceedings to include, among others, Mr. Sullivan.  *See* [JTR Proceedings, D.E. 407]; Complaint at ¶ 183.  In order to invoke the court's inherent power against Mr. Sullivan, neither a party nor counsel in the litigation, Motivation alleged—and was required to prove—that

---

[3] The Court should take judicial notice of the Delaware Litigation and JTR Proceedings, including the JTR court's order [JTR Proceedings, D.E. 528] dismissing sanctions claims against Mr. Sullivan.  *See Blum v. Glen Garron, LLC*, No. 9:14-CV-80858, --- F.Supp.3d ---, 2014 WL 5013745, at *1 n.2 (S.D. Fla. Oct. 1, 2014) ("Because of the substantial interplay of the Plaintiff's foreclosure action with the facts and circumstances of the instant case and because the foreclosure action is relevant to the Court's determination of subject matter jurisdiction, the Court takes judicial notice of the Plaintiff's foreclosure action.") (citations omitted); *see also In re Delta Res., Inc.*, 54 F.3d 722, 725 (11th Cir. 1995) ("[T]his Court may take judicial 'notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings.'") (quotations omitted); *E.I. Du Pont de Nemours & Co., Inc. v. Cullen*, 791 F.2d 5, 6 (1st Cir. 1986) ("'[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.'") (quotations omitted); *cf. Davis v. Self*, 547 Fed.Appx.927, 929 (11th Cir. 2013) ("'Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Mr. Sullivan substantially participated in the proceedings and that he participated in JTR's alleged bad faith conduct.  The Response to that motion established that there was *no* evidence of such participation by Mr. Sullivan and that Motivation's counsel engaged in blatant misrepresentations to the court.  *See generally* [JTR Proceedings, D.E. 457]; *see also* [JTR Proceedings, D.E. 555] at 8-10; [JTR Proceedings, D.E. 482] at 3-6.

The court held a lengthy evidentiary hearing on Motivation's Amended Motion for Sanctions, where Motivation took two days to present evidence, called three witnesses, and submitted fifty-four exhibits into evidence before resting.  *See* [JTR Proceedings, D.E. 528] at 2. Upon conclusion of Motivation's case, Mr. Sullivan argued that he was entitled to a dismissal based on the complete lack of evidence presented against him.  *See id.*  Based on its "careful and thorough review" of the entire record, *see id.* at 2-3, the court granted Mr. Sullivan's motion, *id.* at 4.  The court unsurprisingly held:  "*No evidence* was presented as to Paul Sullivan's interest, financial or otherwise, in the outcome of this case or his direction or control over the litigation." *Id.* at 3 (emphasis added).  Despite the deserved victory against Motivation's frivolous Amended Motion, the damage had been done.  The bad faith conduct forced Mr. Sullivan to incur substantial attorneys' fees and damaged his reputation.  Now Plaintiff persists in this abusive damage by means of another vehicle, the meritless Complaint in this proceeding.

### III.   MEMORANDUM OF LAW

As this motion will establish, Plaintiff's claims are fatally flawed as a matter of law and must be dismissed.  The majority of Plaintiff's allegations of wrongdoing precede any alleged involvement or misrepresentations by Mr. Sullivan.  *See generally* Complaint.  The Complaint's allegations as to Mr. Sullivan's alleged wrongdoing are limited to his conduct in the JTR Proceedings.  *See id.* at ¶¶ 81-184.  The Complaint fails to allege, among other things, specific

6

misconduct or specific misrepresentations by Mr. Sullivan intended to further the alleged fraud, or the manner in which any conduct or representations were made and communicated to Plaintiff.  In fact, the only allegations of misrepresentation by Mr. Sullivan are vague ones addressing his testimony at the JTR Proceedings Sanctions Hearing in 2014.  In short, the allegations regarding Mr. Sullivan are either conclusory or fail to create a plausible inference of the requisite elements, such as Mr. Sullivan's scienter or causation.  The claims must also be dismissed because they fail to satisfy Rule 9(b)'s heightened pleading standard and because they are precluded by the terms of a settlement agreement, over which the Delaware Chancery Court has jurisdiction.[4]

### A. *Legal Standard*

To survive a motion to dismiss, the plaintiff must show entitlement to relief, but "[a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 678 ("[Courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citations omitted).  A complaint must be dismissed if its factual allegations, taken as true, do not "'state a claim to relief that is plausible on its face.'"  *Id.* (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citations omitted).

Furthermore, pursuant to Rule 9(b), in all averments of fraud, the circumstances constituting fraud must be pled with specificity.  Fed.R.Civ. P. 9(b) ("In alleging fraud or

---

[4] Mr. Sullivan joins in and adopts each of the arguments set forth in Defendants, Bruce L. Silverstein and Young Conaway Stargatt & Taylor, LLP's Motion to Dismiss and Incorporated Memorandum of Law filed by Young Conaway Stargatt & Taylor, LLP and Silverstsein ("YCST Motion to Dismiss"), and incorporates them by reference here.  This memorandum will emphasize the arguments particular to Mr. Sullivan.

mistake, a party must state with particularity the circumstances constituting fraud or mistake."). All of the Complaint's counts are subject to this heightened pleading standard.  *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a breed of fraud claims, must be pled with an increased level of particularity.") (citing Fed.R.Civ. P. 9(b); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)); *Alhassid v. Bank of America, N.A.*, No. 14-CIV-20484-BLOOM/Valle, --- F.Supp.3d ---, 2014 WL 6480656, at *14 (S.D. Fla. Nov. 17, 2014) (claim of civil conspiracy to defraud is subject to Rule 9(b)); *Morgan v. W.R. Grace & Co. – Conn.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000) (heightened pleading standard applies to negligent misrepresentation claims under Florida law).

### B.  *The Delaware Judgment Precludes These Claims*

The Complaint is essentially a backdoor vehicle to have this Court, instead of the Chancery Court of Delaware, adjudicate claims implicated by the Delaware Judgment.  As discussed in detail *supra* pages 3-4, Plaintiff released Mr. Sullivan from, among other things, any legal claim, cause of action, covenants, promises, damages, disputes, duties, responsibilities, or obligations, whether known, unknown, foreseen, unforeseen, suspected, unsuspected, concealed, or hidden.  Further, Plaintiff covenanted, among other things, not to sue Mr. Sullivan based, in whole or in part, on any claim released above.  And the terms of the MOU provide that claims regarding the MOU should be adjudicated in the Delaware Chancery Court.  Mr. Sullivan joins in the argument regarding the Delaware Judgment and the *Rooker-Feldman* Doctrine set forth in Section 1 of the YSCT Motion to Dismiss.

### C.  *As a Threshold Matter, The Complaint Must Be Dismissed For Failure To Meet Rule 8(a)'s Pleading Standard and Rule 9(b)'s Heightened Pleading Standard*

Because all of the counts fail to comport with either Rule 8(a) or Rule 9(b), they must be dismissed.[5]   The Complaint fails to allege, among other things, specific misconduct or specific misrepresentations by Mr. Sullivan intended to further the alleged fraud, or the manner in which any conduct or representations were made and communicated to Plaintiff.   In fact, the only allegations of misrepresentation by Mr. Sullivan are vague ones addressing his testimony at the JTR Proceedings Sanctions Hearing in 2014.   "[U]nder Rule 9(b), the [p]laintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud."   *Brooks*, 116 F.3d at 1379-80 (citations omitted); *accord Arthur v. JP Morgan Chase Bank, NA*, 569 Fed.Appx. 669, 684 (11th Cir. 2014) (same).

Plaintiff fails to plead Mr. Sullivan's allegedly fraudulent conduct pursuant to that heightened standard.   For example, aside from Mr. Sullivan's 2014 trial testimony, the Complaint fails to identify:  the alleged false or misleading statements made by Mr. Sullivan; the alleged acts demonstrating Mr. Sullivan's participation or assistance in the fraud; the alleged acts demonstrating any agreement to commit fraud; the alleged acts of concealment of the fraud; or how any alleged false statements or acts were intended to further the fraud or induce Plaintiff to rely on them.   *See generally* Complaint.

The Complaint is further deficient because in both the general allegations and within the specific counts themselves, Plaintiff has improperly lumped multiple defendants together, for example, without alleging which acts are attributable to each, or which individual defendant

---

[5]  The allegations as to state of mind are also defective because "[w]hile, Rule 9(b) allows for averments of state of mind generally, there must be a factual basis to support the allegations of intent."  *See In re Cascade Int'l Secs. Litig.*, 840 F.Supp. 1558, 1578 (S.D. Fla. 1993).

"made what particular statement to whom, and when" and how that representation was fraudulent. *See Curtis Inv. Co., LLC*, 341 Fed.Appx. at 493.[6]

A brief sampling of the allegations establishes their striking deficiencies, including their conclusory nature violative of Rule 8(a)'s pleading standard. *See, e.g.*, Complaint at ¶ 96 (at some point, "Silverstein and Sullivan rejected Horan's advice [to allow Motivation to examine the emeralds], and chose instead to file a motion to dismiss Motivation's claim and wage a year-long, scorched-earth litigation battle to prevent Motivation from examining the emeralds"); *id.* at ¶ 152 (although Scott Miscovich withdrew from further involvement with JTR, at some point, "Sullivan and Silverstein continued supporting and aiding the fraudulent conspiracy"); *id.* at ¶ 187 ("Defendants joined the Miscovich Group's conspiracy with knowledge of its general purpose and scope."); *id.* at ¶ 197 ("At all relevant times, Defendants knew that the actions alleged above were in furtherance of the Miscovich Group's fraudulent scheme."); *id.* at ¶ 211 ("Defendants, with the intent to defraud Plaintiffs of their property, obtained custody of their property by trick, deceit, or fraudulent or willful false representations set forth above."); *id.* at ¶ 242(l) ("Using the interstate wires and mails, Defendants filed false and misleading Status Reports with the Florida Federal District Court."). Eleventh Circuit precedent is clear that the pleadings in this Complaint are wholly inadequate.[7]

---

[6] *See also Kivisto v. Miller, Canfield, Paddock, & Stone, PLC*, 413 Fed.Appx. 136, 138 (11th Cir. 2011) ("In a case involving multiple defendants, the complaint must not lump together all of the defendants, as 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'") (quotations omitted); *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 835 (M.D. Fla. 2011) (affirming dismissal of RICO mail fraud complaint where "*the defendants are not specifically identified in each count according to their own alleged wrongdoing*, but are, instead lumped together simply as members of a certain class of defendants and as general participants in the alleged scheme") (emphasis added).

[7] *See, e.g., Arthur*, 569 Fed.Appx at 685 (affirming dismissal of Florida RICO claim premised on mail fraud in part because "[n]one of the Appellants has alleged either the date a particular

### D.  *The Complaint Must Be Dismissed Because It Fails To State A Claim.*

i.  ***RICO—COUNTS III, V, and VI***[8]

a)  *Count III under § 772.103(3), Fla. Stat. and Count V under 18 U.S.C. § 1962(c)*

Count III under § 772.103(3), Fla. Stat. and Count V do not state a cause of action and must be dismissed.  These RICO claims require proof of at least two predicate acts, and the Complaint haphazardly alleges a list of predicate acts committed by Mr. Sullivan.[9]

Mail or wire fraud requires proof that a defendant "(1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) use[d] or 'cause[d]' the use of the mails or wires for the purpose of executing the scheme or artifice."  *Arthur*, 569 Fed.Appx. at 685 (quotations omitted).  Civil theft requires proof that a defendant (1) knowingly (2) obtained or used, or endeavored to obtain or use, property of another (3) with intent to deprive

---

document was mailed or the locations or individuals responsible for mailing a document," and "they have not alleged sufficient facts or produced documentation to put [the defendant] on notice of either the content or time frame of *particular* mailings") (citations omitted); *Ambrosia Coal & Const. Co.*, 482 F.3d at 1317 (affirming dismissal of civil RICO claim where defendants were lumped together, lacking the required level of specificity); *see also Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quotations omitted) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'").

[8] Count III (Florida RICO count) encompasses three separate types of RICO claims.  To avoid unnecessary repetition and because of the similarity between the federal and state acts, Mr. Sullivan discusses each state RICO claim in conjunction with the related federal RICO count.  *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263-64 (11th Cir. 2004) ("Because 'Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,]' the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims.") (quotations omitted); *accord Rogers v. Nacchio*, No. 05-60667-CIV, 2006 WL 7997562, at *9 n.8 (S.D. Fla. June 6, 2006) (same).

[9] *See* Complaint at ¶¶ 209-17 (under Florida RICO, alleging predicate acts of Organized Fraud, Communications Fraud, Theft, False Official Statements, and Compounding Felony); *id.* at ¶¶ 242-46 (under federal RICO, alleging predicate acts of Mail Fraud, Wire Fraud, False Statements, Obstruction of Justice, and Witness Tampering and Threatening).  Due to page limitations, Mr. Sullivan only addresses some of the predicate acts in detail.

the person of a right to that property or a benefit therefrom, or with intent to appropriate that property to the defendant's own use or to the use of any person not entitled thereto. *Pizzo v. State*, 945 So. 2d 1203, 1207 (Fla. 2006) (citations omitted).[10]  Organized fraud contains all the elements of civil theft as well as an additional element:  "a systematic, ongoing course of conduct with the intent to defraud or take property."  *Id.* (quotations omitted).  And communications fraud contains similar elements to those of organized fraud, except that communications fraud is premised on a communication.[11]

The Complaint's allegations as to all of the predicate acts must be dismissed for a variety of reasons, but as a threshold matter, because they fail to state a cause of action as to the requisite scienter element of each predicate act.  The required mental state for the section 1962(c) RICO claim is the one found in the predicate offense.  *In re Cascade Int'l Secs. Litig.*, 840 F.Supp. 1558, 1582 (S.D. Fla. 1993).  Mail or wire fraud requires proof of "a specific intent to defraud or deceive."  *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783 (11th Cir. 2004), *abrogated on other grounds*, *Diamond Crystal Bands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d

---

[10]  The Complaint's Florida RICO allegations face an additional stringent hurdle requiring dismissal:  the elements of those RICO claims must be proven by clear and convincing evidence. *See Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F.Supp. 1567, 1579-81 (M.D. Fla. 1996) (applying clear and convincing evidence standard to the elements of plaintiff's Florida RICO claims premised on, *inter alia*, theft under § 812, Fla. Stat. and fraud under § 817, Fla. Stat.); *In re Barrett Home Corp.*, 165 B.R. 50, 54 (M.D. Fla. 1994) ("Fla. Stat. § 772.104 clearly indicates that the burden of proof to establish a viable claim pursuant to § 772.104 requires clear and convincing evidence to show that the person charged with engaging in prohibited activities had a criminal intent and received proceeds from a pattern of criminal activity."); *cf. Bullard v. U.S. Bank, N.A.*, No. 3:10cv434-MCR/CJK, 2012 WL 2542907, at *3 (N.D. Fla. June 30, 2012) ("Florida law provides a civil remedy for theft that explicitly requires proof 'by clear and convincing evidence.'") (citing § 772.11, Fla. Stat.).

[11]  *Compare* § 817.034(4)(a), Fla. Stat. ("Any person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud . . . ."), *with id.* at § 817.034(4)(b) ("Any person who engages in a scheme to defraud and, in furtherance of that scheme, communicates with any person with intent to obtain property from that person is guilty, for each such act of communication, of communications fraud . . . .").

1249, 1258 & n.7 (11th Cir. 2010).  Furthermore, in demonstrating a defendant's "intentional participation in the conduct and affairs of the RICO enterprise," "reckless disregard [for the truth] is not a sufficient level of intent to allege the underlying crime."  *In re Cascade Int'l Secs. Litig.*, 840 F.Supp. at 1566-67 (citations omitted).[12]

There are no non-conclusory allegations showing Mr. Sullivan's requisite scienter as to any of the predicate acts.  For example, the Complaint fails to create facial plausibility that Mr. Sullivan either knew of the fraud from the start or that he eventually obtained information that led him to know of the fraud.[13]  While Plaintiff alleges that Mr. Sullivan learned of lab test results providing that a portion of the emeralds tested were coated with modern-day epoxy resins, Complaint at ¶ 98, this does not equate to the conclusory allegation that this information meant he "knew" of the falsity of JTR's October 2011 expert witness summary, *id.* at ¶¶ 98, 102,[14] nor does it create a plausible inference that Sullivan knew of the alleged fraud.

The Complaint also alleges, without specifying a particular point in time when they became "aware", that "Silverstein and Sullivan were aware of all of the evidence of fraud.  As insiders with access to Miscovich over [sic] three years, his documents, and JTR's documents, Silverstein and Sullivan had ample reason to know that JTR was a criminal enterprise."  *See id.*

---

[12] The scienter element as to Florida RICO's predicate acts is similarly demanding.  *See, e.g.*, *Irwin v. Miami-Dade Cnty. Public Schools*, No. 06-23029-CIV, 2009 WL 497648, at *8 (S.D. Fla. Feb. 25, 2009) (theft requires proof of felonious intent, and "[a] showing of 'felonious intent' is a high threshold to meet") (quotations omitted); *Healy v. Suntrust Service Corp.*, 569 So. 2d 458, 460 (Fla. 5th DCA 1990) ("Theft is a specific intent crime, requiring *actual* knowledge on the part of the defendant.") (emphasis added); *see also Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d DCA 1986), *rev. denied*, 494 So. 2d 1151 (Fla. 1986) ("[A] necessary element for establishing the crime of theft is that the defendant had, *prior to* the commission of the act, an intent to commit a theft.") (emphasis added) (citations omitted).

[13] Because the Complaint does not allege *any* misrepresentations or *any* involvement in the fraud by Mr. Sullivan prior to the JTR Proceedings, the only allegations that could possibly support claims against Mr. Sullivan are those regarding the JTR Proceedings, *see* Complaint ¶¶ 81-184.

[14] The modern-day epoxy resin lab tests were only performed on a sample of all of the emeralds in the Emerald Find.  *See id.* at ¶¶ 93, 99.

Case 4:14-cv-10079-JEM   Document 25   Entered on FLSD Docket 01/16/2015   Page 14 of 20

at ¶ 148. Like so many of the Complaint's allegations, the conclusory nature of this allegation dooms it from further review. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) ("A RICO plaintiff's allegations of scienter cannot be 'merely conclusory and unsupported by any factual allegations.'") (quotations omitted). Even putting aside those striking deficiencies, this allegation is implausible. Merely being a *non-managing* member of JTR does not create an inference that Mr. Sullivan was an "insider[] with access." The Complaint fails to allege how this limited role gave Mr. Sullivan any particular access to Miscovich's or JTR's documents, and the Complaint fails to allege what kind of documents Mr. Sullivan had access to which made him aware of the fraud. The remaining allegations are likewise insufficient to support a plausible claim of the requisite scienter.

Furthermore, the Complaint does not allege either that Mr. Sullivan intentionally acted to further the fraud or that any of his conduct did in fact further the fraud. In attempted support of those elements, the Complaint relies on allegations that (1) Mr. Sullivan was involved in some of JTR's litigation strategy, *see id.* at ¶¶ 96, 108, 172; (2) he volunteered to help JTR by taking over as its managing member (only if Miscovich stepped down), *see id.* at ¶¶ 164-66;[15] and (3) he testified as JTR's official corporate representative at the January 2014 sanctions trial against

---

[15] Some of the Complaint's allegations are nothing more than "'naked assertion[s]' devoid of 'further factual enhancement,'" which is insufficient to comply with basic pleading standards. *See Ashcroft*, 556 U.S. at 678 (quotations omitted). For example, Plaintiff alleges that in three separate October 2013 emails, Mr. Sullivan volunteered to take over as JTR's managing member, *see id.* at ¶¶ 164-66, and that in one of those emails, Mr. Sullivan stated "he was 'willing to do anything to help including testifying in Jan. and taking over as [managing member of JTR],'" *see id.* at ¶ 166. Based on these allegations, Plaintiff takes a gigantic conclusory leap and subsequently alleges: "These emails show that when faced with the ethical dilemma of admitting the truth and walking away from a substantial investment of reputations and money, or denying the truth and continuing to support the fraud on the court, . . . Sullivan volunteered to 'do anything' to help advance the fraudulent case . . . ." *Id.* at ¶ 167. There is a complete disconnect between an allegation of Mr. Sullivan's offer to help JTR's claim and the conclusory allegation of Mr. Sullivan's knowledge of the fraud and his intentional conduct in denying the truth and continuing to support the fraud.

14

JTR, *see id.* at ¶¶ 172, 174.  But these allegations are insufficient to raise any inference of Mr. Sullivan's intent to further the fraud or his participation in that fraud, as demonstrated by the JTR court's order dismissing sanctions claims against him.[16]

The RICO claims must also be dismissed because the allegations do not support each requisite element, including, but not limited to, the predicate acts;[17] the requisite specificity regarding probable cause;[18] control of the enterprise;[19] causation; and a continuous pattern of racketeering.  As to causation,[20] for instance, the Complaint does not allege that Mr. Sullivan was involved in seeking the initial investments and loans regarding the alleged fraud (which allegedly caused Plaintiff's investment and loan losses of $1.6 million), *see* Complaint at ¶¶ 29, 43, or that Sullivan was involved in the Delaware Litigation (which allegedly caused Plaintiff's

---

[16] *See* [JTR Proceedings, D.E. 528] at 3 ("*No* evidence was presented as to Paul Sullivan's interest, financial or otherwise, in the outcome of this case or his direction or control over the litigation.") (emphasis added); *see also id.* (discussing Motivation's evidence at the trial regarding Mr. Sullivan's alleged participation in the fraud, evidence demonstrating that he was *not* involved in or had knowledge of the fraud).

[17] For example, the Complaint does not state a claim for false official statements under 18 U.S.C. § 1001 or § 837.06, Fla. Stat., because, as discussed *supra*, the allegations are insufficient to support the element of Mr. Sullivan's scienter, *i.e.*, that Mr. Sullivan knowingly or willfully made any false statements or with intent to mislead a judge.  And the Complaint's claim for compounding felony under § 843.14, Fla. Stat., must fail because, aside from the deficient scienter allegations, there is not a single allegation that Mr. Sullivan took or received any money, gratuity, reward, or an engagement.  The same dearth of allegations applies to the federal predicate acts of obstruction of justice and witness tampering and threatening.

[18] *See In re Cascade Int'l Secs. Litig.*, 840 F.Supp. at 1566 ("[T]he [c]omplaint must allege 'two acts of racketeering with enough specificity to show that there is probable cause the crimes were committed.  That determination is possible only if the factual basis of the predicate acts is set out with specificity.'") (quotations omitted).

[19] *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs.").

[20] *See Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992) (Civil RICO plaintiff must show proximate cause, *i.e.*, a "direct relation between the injury asserted and the injurious conduct alleged").

losses of not less than $1.7 million), *see id.* at ¶ 49.  Because Plaintiff alleges that Mr. Sullivan's wrongful conduct occurred only during the JTR Proceedings, the Complaint fails to allege conduct that caused Plaintiff's damages prior to the JTR Proceedings.

And the Complaint fails to allege causation even as to Plaintiff's limited damages incurred during the JTR Proceedings.  It does not allege how those damages were caused at any point by Mr. Sullivan's limited involvement as a non-managing member of JTR, or otherwise. Plaintiff's own allegations are that JTR's alleged fraud was revealed at least by January 15, 2014.[21]  *See id.* at ¶¶ 176-77.  It is therefore implausible that Mr. Sullivan's testimony on January 13th and 14th, 2014 during the sanctions trial caused Plaintiff's damages.  *See id.* at ¶ 174.[22]

Plaintiff's failure to adequately allege a pattern of racketeering activity[23] is also fatal to the RICO claims.  The Complaint alleges a fraudulent scheme to induce investors and lenders to contribute funds to a fabricated discovery of a valuable emerald find, forming JTR "as an investment vehicle and to file an admiralty case . . . for the purpose of establishing a court-endorsed fraudulent treasure provenance for the emeralds."  *See* Complaint at ¶¶ 1, 3; *see also id.*

---

[21] Although plaintiff alleges that it was JTR's trial counsel that revealed the alleged fraud, it was in fact revealed because Mr. Sullivan insisted the jeweler, Jorge Rodriguez, testify at the sanctions hearing even though Mr. Sullivan knew that testimony would be harmful to JTR's claim.  *See* [JTR Proceedings, D.E. 528] at 3 ("Both witnesses [at the sanctions hearing against Mr. Sullivan] testified that . . . upon learning of the testimony of the Jupiter jeweler, Mr. Rodriguez, [Mr. Sullivan] was one of those that insisted that these facts be brought to the Court's attention as soon as possible.").

[22] Evidencing the implausibility of causation, the JTR court found no evidence that Mr. Sullivan had an interest or any involvement in the JTR Proceedings.  *See* [JTR Proceedings, D.E. 528].

[23] *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (closed-ended period of continuity can be shown by "a series of related predicates extending over a substantial period of time"); *see also Kaye v. D'Amato*, 357 Fed.Appx. 706, 717 (7th Cir.) ("Although [plaintiff] alleges that Defendants engaged in unethical activities, it is not the kind of activity a RICO cause of action requires.  Congress enacted RICO to target *long-term* criminal activity, not as a means of resolving routine commercial disputes.") (citations omitted) (emphasis added).

at ¶¶ 235-39. That alleged scheme was necessarily terminated by January 15, 2014, at the latest. *See id.* at ¶¶ 176-77. The Complaint fails to allege otherwise. Given the narrow scope of the alleged predicate acts committed by Mr. Sullivan,[24] which did not occur over a substantial period of time, the Complaint fails to allege a RICO "pattern".[25]

      b.    *Count III under § 772.103(4), Fla. Stat. and Count V under 18 U.S.C. § 1962(d)*

      The RICO conspiracy claims must also be dismissed because the Complaint lacks non-conclusory factual allegations that either Mr. Sullivan "agreed to the overall objective of the conspiracy" or that he "agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-94, 1296 (11th Cir. 2010) (affirming dismissal of RICO conspiracy claim after ignoring any allegations in the complaint "that are merely legal conclusions" or "'formulaic recitations' of a conspiracy claim"). The Complaint fails to allege any scienter of wrongdoing by Mr. Sullivan, and the allegations as to his conduct do not create an inference of the requisite conspiracy agreement.

      The dismissal of these claims is also proper because the RICO conspiracy claims are based on the same allegations as the substantive RICO claims. *See Am. Dental Ass'n*, 605 F.3d at 1296 n.6 (declining to decide whether a plaintiff's failure to state a substantive RICO claim

---

[24] *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) ("In analyzing the issue of continuity, . . . we evaluate the RICO allegations with respect to each defendant individually. . . .").

[25] *See Kivisto*, 413 Fed.Appx. at 138 ("When a civil RICO claim is brought with respect to a closed period of time . . . , continuity cannot be shown by allegations of a scheme that lasted only nine months.") (quotations omitted); *Jackson*, 372 F.3d at 1267 ("in cases . . . where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time [than nine months]") (listing cases where no RICO pattern was found, including one where predicate acts occurred over three year period) (citations omitted); *First Capital Asset Mgmt., Inc.*, 385 F.3d at 181 ("[W]hile two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern.").

necessarily requires dismissal of that plaintiff's civil RICO conspiracy claim based on different allegations, but citing its prior holding that "'where a plaintiff fails to state a RICO claim *and the conspiracy count does not contain additional allegations*, the conspiracy claim necessarily fails'") (emphasis in original) (quotations omitted); *accord In re Mouttet*, 493 B.R. 640, 661 (S.D. Fla. 2013) (same).

        *c.*    *Count III under § 772.103(2), Fla. Stat.*

The Florida § 772.103(2) RICO claim must also be dismissed for all the reasons that the federal RICO claims must be dismissed. While Plaintiff alleges that Mr. Sullivan held an equity interest in JTR and, as discussed *supra*, that Mr. Sullivan directed some of JTR's litigation strategy (allegations directly refuted by the JTR court's order dismissing the sanctions claims against him), the Complaint fails to allege how Mr. Sullivan acquired or maintained, through a pattern of racketeering activity, any interest or control in the alleged RICO enterprise. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1519 (11th Cir. 1991) (dismissing § 1962(b) RICO claim, despite an allegation that the defendant had a partnership interest in the RICO enterprise, because complaint failed to "allege any facts from which one could infer that he acquired or maintained his partnership interest in that enterprise through a pattern of racketeering activity"), *abrogated on other grounds*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 655-57 (2008).

### *ii.*    *CONSPIRACY TO DEFRAUD—COUNT I*

The conspiracy to defraud claim must fail for the same reasons that the RICO claims must fail. Like the deficient RICO conspiracy claims, the Complaint does not allege that Mr. Sullivan entered into an agreement with another defendant to defraud Plaintiff.[26]  Furthermore,

---

[26] *See Alhassid*, 2014 WL 6480656, at *13 ("dismissing civil conspiracy claim where plaintiff failed to allege facts suggesting a conspiracy agreement other than contending that defendants had a common goal, scheme, or purpose") (citations omitted); *Russo v. Fink*, 87 So. 3d 815, 819

the Complaint fails to state a claim for fraud, the requisite actionable underlying illegal act.[27] For example, the Complaint does not allege that Mr. Sullivan knowingly made any false statements, other than the allegations regarding his testimony at the January 2014 sanctions trial. As to that allegedly false testimony, the Complaint does not allege that Mr. Sullivan made those statements with the "inten[t] to induce [Plaintiff] to act" or that Plaintiff "relied upon the statement[s]," causing it to suffer damages. *See Opteum Fin. Servs., LLC v. Kolbe*, No. 8:03-CV-355-T-17TBM, 2010 WL 3766470, at *11 (M.D. Fla. Sept. 22, 2010).

### iii.   AIDING AND ABETTING FRAUD—COUNT II

Plaintiff's claim for aiding and abetting fraud must also be dismissed as the Complaint fails to allege, among other things, the requisite scienter element or the substantial assistance element.[28]   Mr. Sullivan's limited role as JTR's member and his brief stint as JTR's corporate representative do not create the plausibility that he "substantially assisted" the alleged fraud.

### iv.   NEGLIGENT MISREPRESENTATION—COUNT IV

Like the other claims, the negligent misrepresentation claim must be dismissed for a host of reasons.  The Complaint does not allege that Mr. Sullivan made any false statements with the intent to "induce" Plaintiff to act on it.  *See Opteum Fin. Servs., LLC*, 2010 WL 3766470, at *12.

---

(Fla. 4th DCA 2012) (plaintiff failed to allege a conspiracy to defraud where the complaint only alleged that the defendants encouraged each other to act unlawfully and had full knowledge of each other's unlawful actions); *see also Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) ("While . . . a conspiracy may be proven by circumstantial evidence, this may be done 'only when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary.'") (quotations omitted).

[27] *See Raimi*, 702 So. 2d at 1284 ("[A]n actionable conspiracy requires an actionable underlying tort or wrong.").

[28] *See Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983) ("Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct . . . .").

The Complaint also fails to allege that Plaintiff *actually* relied on[29] any misrepresentations made by Mr. Sullivan or that Plaintiff's injuries were caused by that reliance.

**IV.    CONCLUSION**

In light of the Complaint's attempt to circumvent the Delaware Chancery Court's jurisdiction, its failure to meet Rule 9(b)'s heightened pleading standard, the other implausibility of its allegations, and because each count fails as a matter of law, Mr. Sullivan respectfully requests that this Court dismiss the claims against him with prejudice.

Dated this 16th day of January, 2015.

Respectfully submitted,
PODHURST ORSECK P.A.
*Attorneys for Paul D. Sullivan*
City National Bank Building, #800
25 West Flagler Street
Miami, FL 33130
Tel: 305-358-2800   Fax: 305-358-2382

By: /s/John Gravante, III
    *JOHN GRAVANTE, III*
    Florida Bar No. 617113
    E-Mail: jgravante@podhurst.com

    *ROBERT C. JOSEFSBERG*
    Florida Bar No. 040856
    E-Mail: rjosefsberg@podhurst.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 16th, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/John Gravante, III

*JOHN GRAVANTE, III*

---

[29] *See In re Cascade Int'l Secs. Litig.*, 840 F.Supp. at 1571 ("Actual reliance is one of the elements for a negligent misrepresentation cause of action.") (citations omitted).